UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA BELL TELEPHONE COMPANY, INC., )<br>       Plaintiff, )<br>)<br>  vs. )<br>)<br>DAVID LOTT HARDY, Chairman, )<br>LARRY S. LANDIS, GREGORY D. SERVER, )<br>DAVID E. ZIEGNER, and JEFFREY L. GOLC, )<br>in Their Official Capacities as Commissioners of the )<br>Indiana Utility Regulatory Commission and Not as )<br>Individuals, )<br>       Defendants, )<br>)<br>  and )<br>)<br>NUVOX COMMUNICATIONS OF INDIANA, INC.,)<br>and COVAD COMMUNICATIONS COMPANY, )<br>       Intervenor-Defendants. ) | 1:07-cv-1437-WTL-TAB |

**ORDER**

Plaintiff, Indiana Bell Telephone Company, Inc. ("AT&T Indiana"), initiated this action seeking judicial review of the Final Order of the Indiana Utility Regulatory Commission ("IURC") that directed AT&T Indiana to continue sharing part of its telephone network with competitors based on the IURC's determination regarding the number of fiber-based collocators ("FBCs") in particular wire centers. This cause is before the Court on AT&T Indiana's Motion for Summary Judgment (Docket No. 27). This cause is somewhat unique in that there are no factual disputes. Further, both sides of this dispute have requested that the Court enter judgment in their favor. Therefore, the Court treats the responses to AT&T Indiana's motion as cross motions for summary judgment.

For the reasons that follow, the Court **DENIES** AT&T Indiana's motion and **GRANTS** Defendants' and Intervenor-Defendants' cross motions for summary judgment.

## I. <u>BACKGROUND</u>

Congress's enactment of the Telecommunications Act of 1996, Pub. L. 104-104, 110 Stat. 56, codified at 47 U.S.C. § 151 *et seq.* ("the Act"), fundamentally restructured local telephone markets. *See AT&T Corp. v. Iowa Utils. Bd.,* 525 U.S. 366, 371 (1999). The Act serves to promote competition in a previously monopoly-driven local telephone service market. *See Verizon Commc'ns, Inc. v. FCC*, 535 U.S. 467, 475-76 (2002). To help accomplish this goal, the Act requires an incumbent local exchange carrier ("ILEC") like AT&T Indiana to share its network with competitors ("CLECs") via a practice known as "unbundling." *See* 47 U.S.C. § 251(c)(3); *AT&T Corp.*, 525 U.S. at 371. The Act delegates the task of determining those network elements that must be unbundled to the Federal Communications Commission ("FCC") based on an access standard of whether failure to furnish the network elements would impair the ability of a CLEC to provide the services it seeks to offer. *See* 47 U.S.C. § 251(d)(2). Pursuant to that authority, the FCC has issued a series of orders addressing the scope of an ILEC's obligation to unbundle its network elements.

The FCC's most current set of unbundling rules, known as its "Triennial Review Remand Order," was issued on February 4, 2005. *See In re Unbundled Access to Network Elements*, 20 F.C.C.R. 2533 (Feb. 4, 2005) (order on remand) ("TRRO"). The FCC concluded that the best and most readily administered indicators of whether a CLEC is impaired at a particular wire center are business line density and the presence of FBCs. *Id*. at 2588. Therefore, the FCC established numeric thresholds for determining impairment based on the following criteria: the loop, or wire connecting telephones to switches; the number of business lines; and the number of FBCs at a particular wire center. *See* 47 C.F.R. 51.319(a). The FCC placed the burden of proof on the ILEC to demonstrate nonimpairment of a particular wire center. *See TRRO*, 20 F.C.C.R. at 2666. The

FCC's current set of unbundling rules has been upheld on appeal. *See Covad Commc'ns Co. v. FCC*, 450 F.3d 528 (D.C. Cir. 2006).

The Act gives state utility commissions such as the IURC the authority to arbitrate open issues and approve interconnection agreements. *See* 47 U.S.C. § 252(b) and (e). Based on that provision, AT&T Indiana filed a petition on February 17, 2006, with the IURC to resolve a dispute between AT&T Indiana and Defendant-Intervenor NuVox Communications, Inc. R. at 2-14. In March 2006, Defendant-Intervenor Covad Communications Company joined the fray when it intervened in the administrative proceeding. *Id*. at 48-50, 518. Following the filing of testimony, an evidentiary hearing, and post-hearing briefing, the IURC issued an order on August 15, 2007, resolving several issues of the dispute, including the number of FBCs in the subject wire centers. *Id*. at 518-550. As a result of this determination, the count for FBCs did not rise above the limits that would render the subject wire centers unimpaired under the regulations. AT&T Indiana now challenges the portion of the IURC's order determining the number of FBCs.

## II.  STANDARD OF REVIEW

As noted, the parties agree that there are no factual disputes and that this case presents a purely legal issue of whether the IURC's Final Order is consistent with federal law. Therefore, the appropriate standard of review for this question of law is *de novo*. *See Ind. Bell Tel. Co. v McCarty*, 362 F.3d 378, 385 (7th Cir. 2003).

### III. DISCUSSION

The central issue in this case involves a disagreement on the methodology for counting FBCs. AT&T Indiana believes that a CLEC that uses a coaxial cable to cross-connect to another CLEC already counted as an FBC ("the host CLEC") should in turn be counted as an FBC. Defendants and Defenant-Intervenors disagree with the AT&T Indiana and believe that the cross-connecting CLEC does not meet the FCC's definition for an FBC.

The issue is not a new one. Several state agencies have addressed it, most deciding the issue favorably to the position of Defendants and Defendant-Intervenors. *See, e.g.*, *Sw. Bell Tel., L.P. v. NuVox Commc'ns of Ark., Inc.*, 2007 Ark. PUC LEXIS 383 (Oct. 8, 2007); *Pac. Bell Tel. Co. v. Cbeyond Commc'ns, LLC*, 2008 Cal. PUC LEXIS 146 (Apr. 24, 2008); *In re Ill. Bell Tel. Co.*, 2006 WL 4049768 (Ill. Commerce Comm'n Dec. 6, 2006); *Sw. Bell Tel., L.P. v. NuVox Commc'ns of Kan., Inc.*, 2006 WL 2360900 (Kan. State Corp. Comm'n June 2, 2006); *In re Accessible Letters Issued by SBC Michigan & Verizon*, 2005 Mich. PUC LEXIS 310 (Sept. 20, 2005); *In re Application of NuVox Commc'ns of Mo., Inc.*, 2008 Mo. PUC LEXIS 331 (March 31, 2008). At least one state agency has reached the contrary conclusion that cross-connecting CLECs can be considered FBCs. *See In re XO Commc'ns, Inc.*, 2006 WL 1540270 (Ohio Pub. Utils. Comm'n June 6, 2006). In addition to these state agency determinations, it appears that two district courts have considered the issue, both of which affirmed their respective state agency orders, thereby reaching opposite results. *See XO Commc'ns Servs., Inc. v. Ohio Bell Tel. Co.*, No. 2:07-cv-500, 2008 WL 755863 (S.D. Ohio March 18, 2008); *Mich. Bell Tel. Co. v. Lark*, No. 06-12374, 2007 WL 1343691 (E.D. Mich. May 8, 2007). Somewhat surprisingly, even though both courts are in the Sixth Circuit, it appears that no appeal was perfected in either one.

Although none of the sources noted are binding, they are helpful in resolving the issue. As explained herein, the Court, having considered these sources as well as the text of the regulations, ultimately concludes that a CLEC that cross-connects to a host CLEC does not meet the definition of an FBC.

The FCC's regulations define an FBC as follows:

Fiber-based collocator. A fiber-based collocator is any carrier, unaffiliated with the incumbent LEC, that maintains a collocation arrangement in an incumbent LEC wire center, with active electrical power supply, and operates a fiber-optic cable or comparable transmission facility that

(1) terminates at a collocation arrangement within the wire center;

(2) leaves the incumbent LEC wire center premises; and

(3) is owned by a party other than the incumbent LEC or any affiliate of the incumbent LEC, except as set forth in this paragraph. Dark fiber obtained from an incumbent LEC on an indefeasible right of use basis shall be treated as non-incumbent LEC fiber-optic cable. Two or more affiliated fiber-based collocators in a single wire center shall collectively be counted as a single fiber-based collocator. For purposes of this paragraph, the term affiliate is defined by 47 U.S.C. § 153(1) and any relevant interpretation in this Title.

47 C.F.R. § 51.5. Here, an understanding of the terms "operates" and "comparable transmission facility" is essential to resolving the issue in this case. Unfortunately, the regulations do not define these terms. As such, the Court has resorted to the use of dictionaries to apply the ordinary and plain meaning of these terms to § 51.5. *See United States v. Santos*, --- U.S. ---, 128 S.Ct. 2020, 2024 (2008) (citing *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995)); *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000).

Section 51.5 uses the verb "operates" in its transitive sense because it requires an FBC to operate a fiber-optic cable or a comparable transmission facility. The ordinary definition of "operate" in this sense includes the phrases "to cause or direct the functioning of; to control the

5

working of" and "to manage, to direct the operation of." *See* The Oxford English Dictionary, http://dictionary.oed.com/cgi/findword?query_type=word&queryword=operate (follow "operate, *v.*" hyperlink) (last visited March 19, 2009). Based on these definitions, the Court concludes that § 51.5 requires some level of control or management over the fiber-optic cable or facility in question in order for a CLEC to qualify as an FBC. Like the *Lark* court, the Court agrees that such activity includes such things as "surveillance of the integrity of the system, respond[ing] to trouble reports, and undertak[ing] routine maintenance." *Lark*, 2007 WL 1343691 at \*6 (quoting *Sw. Bell Tel., L.P.*, 2006 WL 2360900 at \*7).

Based on this understanding of the term "operates," the Court finds that a CLEC which merely cross-connects to a host CLEC is not an FBC. Such a CLEC is not operating a fiber-optic cable or comparable transmission facility by virtue of its arrangement with the host CLEC. Specifically, it has no control over the network system's operation or speed. R. at 698-99, 702. It does not have the ability to "light" or activate fiber and does not have the ability to maintain the network. Instead, it is the host CLEC that has the ability to determine such things as capacity and the operating characteristics. *Id.* Accordingly, the Court concludes that the IURC correctly found against AT&T Indiana on this point. R. at 548.

AT&T Indiana nonetheless contends that this interpretation blurs the distinction between operation and ownership. Like the *Lark* court, the Court rejects this argument. *See Lark*, 2007 WL 1343691 at \*6. Neither the IURC nor the Defendant-Intervenors have argued that ownership of a fiber-optic cable or comparable transmission is the quintessential feature for an FBC. Indeed, the FCC's exception for counting entities who have obtained dark fiber on an indefeasible right of use

6

basis illustrates that ownership is not required and, instead, that some sort of control over the property in question is necessary.  *See* 47 C.F.R. § 51.5.

In addition, not only does AT&T's position fail with respect to the definition of "operates" as used in § 51.5, it also fails with respect to the term "comparable transmission facility."  The word "comparable" can be defined as "able to be compared; capable of comparison" and "worthy of comparison; proper, or fit to be compared."  *See* The Oxford English Dictionary, http://dictionary.oed.com/cgi/entry/50045359?single=1&query_type=word&queryword=comparable&first=1&max_to_show=10 (last visited March 19, 2009).  The IURC determined that the use of a coaxial cable to cross-connect to a host CLEC did not qualify as a comparable transmission facility because it was not sufficiently similar or equivalent in terms of capacity.  R. at 549.

The Court concludes that "comparable transmission facility" as used in § 51.5 entails a facility that has features and functionality similar to a fiber-based facility.  The Court hesitates, however, to suggest that a certain capacity is required in order to be comparable given -- as the Illinois Commerce Commission observed -- the reality of "ever-changing" technology.  *In re Bell Tel. Co.*, 2006 WL 4049768 at *18.  Nonetheless, the Court is troubled by AT&T Indiana's argument that a capacity of one DS3, the minimum capacity that could be supported by a fiber network for a minimal distance, would be considered as comparable when it appears that it is common industry practice to use a capacity of at least twelve DS3 (or OC-12).  R. at 708, 714.  *See also In the Matter of Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 18 F.C.C.R. 16978, 17219 (Aug. 21, 2003) ("TRO"), *vacated in part by United States Telecom Ass'n v. FCC*, 359 F.3d 554 (D.C. Cir. 2004); *In re Bell Tel. Co.*, 2006 WL 4049768 at *17; *Sw. Bell Tel., L.P.*, 2006 WL 2360900 at *5.  Further, the Court notes that the IURC opted

to find that a comparable facility must have a capacity of at least three DS3. R. at 549. There was evidence in the record to support that determination. *Id.* at 708, 714. Consequently, while the Court is hesitant to conclude that a certain capacity is required for something to be considered a comparable transmission facility, the Court believes that the capacity is probably some amount greater than a capacity of one DS3.

Capacity concerns aside, a more important problem posed by AT&T Indiana's position is presented by the requirements that a comparable transmission facility terminate within a wire center and leave the wire center premises. *See* 47 C.F.R. § 51.5. A CLEC that uses a coaxial cross-connection does not satisfy that arrangement; the cross-connector facility begins and ends in the wire center. It is only the host CLEC that operates the transmission path that exits the wire center. Therefore, based on these characteristics, the Court concludes that the cross-connecting CLECs in question do not satisfy the definition of comparable transmission facilities.

The Court's conclusion is not altered by AT&T Indiana's contention that a cross-connection should count because the FCC specifically indicated that non-traditional collocation arrangements such as CATT fiber termination arrangements can be considered as FBCs. *See* TRRO, 20 F.C.C.R. at 2593. However, AT&T Indiana has offered no evidentiary support from the record to enable such a comparison to be considered in this case. If there is such evidence, the Court declines to scour the record to find it. *See* Local Rule 56.1(e); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Moreover, based on the descriptions, it appears that a CATT arrangement is distinguishable and unlike the cross-connecting arrangements in question. *See* R. at 703, 705; AT&T Indiana's Br. in Supp. at 14 n. 17; *In re Bell Tel. Co.*, 2006 WL 4049768 at * 16. Such an arrangement depends on the use of splicing dark fiber and then leasing strands to competitive

carriers, who in turn would have to light those fibers. In contrast, as already noted, the cross-connecting CLEC does not have the ability to light or maintain the fibers in its arrangement that are controlled by the host CLEC. Finally, even if the cross-connecting arrangement were similar to a CATT arrangement, they would still have to meet the requirement of leaving the wire center premises. As the Court has already concluded, they do not. Consequently, AT&T Indiana's reference to the CATT fiber termination arrangements is unpersuasive.

Moreover, the Court concludes that the foregoing interpretation is consistent with other provisions of the regulations and policy concerns. First, the FCC made it clear in § 51.5, as well as in paragraph 102 and accompanying footnote 292 of the TRRO, that companies obtaining fiber on an indefeasible right to use basis should not be counted as FBCs. *See* 47 C.F.R. § 51.5; TRRO, 20 F.C.C.R. at 2593-94 & n.292. The TRRO also specifically referenced paragraph 408 and footnotes 1263 and 1265 of the TRO. *See* TRRO, 20 F.C.C.R at 2593 n. 292 (citing TRO, 18 F.C.C.R. at 17231-32 & nn. 1263, 1265). Those portions of the TRO indicated that affiliates and companies obtaining lit fibers on an indefeasible right to use basis should be excluded as separate FBCs from the FBC count. *See id.* The implication from these portions of the TRO is that cross-connectors also should be excluded from the count because they are essentially making use of lit fibers that the host CLEC has already acquired. Thus, in effect, "double counting" of the host CLEC's arrangement is not intended.

Finally, the purpose behind the FCC's impairment criteria was to determine "where the CLECs [would] be economically able to deploy their own high-speed facilities, thus obviating the need for [unbundled network elements]." *Covad*, 450 F.3d at 544; *see also* TRRO, 20 F.C.C.R. at 2579-80 (noting that FCC's impairment analysis implicitly considers deployment costs because it

9

"focuses on actual competitive deployment, which signifies that actual and potential revenues justified the underlying costs"); *Lark*, 2007 WL 1343691 at *6 (discussing paragraphs 96, 98, and 161 of the TRRO); *In re Ill. Bell Tel. Co.*, 2006 WL 4049768 at *15-16 (same). Counting more than once the host CLEC that was able to make the investment in fiber facilities, which is essentially what AT&T Indiana's approach accomplishes, does not accurately demonstrate that a wire center can economically support the deployment of multiple fiber facilities. In fact, cross-connection implies the opposite: that the cross-connecting CLEC cannot justify the cost of fiber deployment and so elects to cross-connect to the host CLEC, which has already undertaken the cost of provisioning its facilities.

Based on all of the foregoing considerations, the Court concludes that the IURC correctly determined that the cross-connecting CLECs in question did not meet the FCC's definition of an FBC. Therefore, the Court finds that the IURC's Final Order should be **AFFIRMED**.

## IV.  CONCLUSION

For the reasons explained herein, AT&T Indiana's Motion for Summary Judgment (Docket No. 27) is **DENIED**, and Defendants' and Defendant-Intervenors' cross-motions are **GRANTED**. Therefore, the decision of the Indiana Utility Regulatory Commission is **AFFIRMED**.  Judgment shall be entered accordingly.

IT IS SO ORDERED: 03/23/2009

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Electronically distributed to:**

William J. Champion III
DICKINSON WRIGHT PLLC
wchampion@dickinsonwright.com

J. Tyson Covey
MAYER BROWN LLP
jcovey@mayerbrown.com

Cathy  Elliott
BOSE MCKINNEY & EVANS, LLP
celliott@boselaw.com

Nikki  Gray Shoultz
BOSE MCKINNEY & EVANS, LLP
nshoultz@boselaw.com

Beth Krogel Roads
INDIANA UTILITY REGULATORY COMMISSION
bkroads@urc.in.gov

Bonnie K. Simmons
AT&T INDIANA
bs7879@att.com

David L. Steiner
INDIANA OFFICE OF THE ATTORNEY GENERAL
dsteiner@atg.state.in.us